Hall, J.
In this case, both the plaintiffs and defendants claim the negroes for which this action is brought, under William Williamson, one of the legatees of Thomas Davis. The special verdict states, that Williamson removed himself to, and became a citizen of this state, where he resided until his death : it is admitted, that at the time of his death, by the laws of Virginia, negro property was made to descend like land to the heir at law, he making on that account, some pecuniary satisfaction to the next of kin ; and at that time, by the laws of this state, property of that description, was made distributable equally amongst all the children of intestates.
The question therefore is, whether the negroes for which this suit is brought, shall be disposed of agreeably to the laws of Virginia, they having been in Virginia, at the time of the death of William Williamson, the legatee, or by the laws of this state, where William Williamson was resident at the time of his death ?
I take the rule of law, in such cases, to be this that the personal estate of the intestate, is distributable according to the laws of the country where the intestate was resident, or in other words, where he was a citizen or subject at the time of his death. Ambler, 25, 415, 2 Vezey, 35. Although by the laws of Virginia, negroes are made to descend like *221 land to the heir at law, yet in many other respects they are considered to be personal estate : and indeed our law, would view them as personal estate whenever any case like the present should occur, notwithstanding the laws of Virginia would never view them as personal property. I cannot think that the decree made by the court of Virginia, strengthens the defendant’s title ; because the plaintiffs were not parties to it. Had they been parties to it, and the grounds on which the present detentions rest, been made known to that court, I presume their decree would have been different. I think that all the children of William Williamson are entitled to the property in dispute ; amongst whom, the plaintiffs will be compellable to make distribution, after debts are paid, &c.; and that judgment should be entered for the plaintiffs.
Taylor, J.
The material facts of the case are, that Thomas Davis by his will, which was admitted to probate in the year 1762, bequeathed a female slave of the name of Sarah, to his daughter, Frances Williamson, during her life ; and after her decease, the wench and her increase, to be equally divided among the children of Frances. Frances had six children, one of whom, William, removed to this state, and died in 1768, leaving a widow and nine children ; George being his eldest son. Afterwards, in the beginning of the year 1769. Frances died ; upon which the issue of Sarah were divided under the authority of a court of chancery in Virginia. A sixth part was allot *222 ted to George, as the heir at law of William ; this was received by his guardian, and afterwards, upon his arriving at full age, brought into this state by himself ; until which time, all the negroes defended from Sarah, had remained constantly in Virginia. George died in the year 1780, leaving a widow and child, who possessed themselves of the negroes which they have retained ever since. The widow of William administered upon her husband’s estate, and afterwards, intermarried with Peter Cox, who (together with his wife) has brought the present action to recover the negroes as of the goods and chattels of William. A demand had been previously made of the defendants, one of whom defends as administator (in right of his wife) to George Williamson, and the other as guardian to George’s child.
From these facts, two questions arise ; one is whether the division made in Virginia, ought not, as far as it respected the share derived though Willliam, to have been according to the laws of this State ; whereof William, both before and at the time of his death was a citizen, and an inhabitant ? The other question is, whether, upon the supposition that the division was improperly made, the decree directing it is not conclusive, as the sentence of a count of competent jurisdiction ?
As to the first ; I consider it perfectly clear and well settled, that although the descent of lands is to be regulated according to the law of the country wherein they are situated, yet the succession *223 and distribution of moveable property is to beguided by the law of the country, where the owner has his domicle. This is a principle of the law of nations, which hath been recognised and sanctioned by a variety of adjudications. To the authorities already cited, may be added 4 Term Rep. 134 Kaime’s principles of Equity, 4, Vattel B. 2. 6. 7. sec. 85, cap. 8. sec. 109. 110.
I can entertain no doubt about the sufficiency of these authorities ; and I believe they would be approved and followed by the courts of this state, upon an application to distribute the effects of a foreigner, it made within due time ; and that they would receive evidence of the law, according to which the distribution was sought. No decision upon this point, is recollected ; but the weight and number of the cases, and, especially, the intrinsic justice of the principle which pervades them, form the grounds of my belief. The doctrine too, seems to acquire strength in its application to the United States, from the nature of their political relations ; which are equally calculated to cherish a spirit of friendly intercourse, amongst the citizens of the Union ; and to promote in each State, a respectful deference to the laws of all. The court of Virginia would, without doubt, have given effect to the claims of the other parties concerned, unless there be some law of that State, expressly to prevent it. But the existence of such a law, cannot well be imagined ; because there can be no reason, why a state should be concer *224 ned about the manner in which strangers hold that sort of property, which they may freely carry away with them. All that, as a State, she can be interested in ascertaining is, whether the party asserting a claim in her courts of justice, really possesses a right, according to the laws of his own country ; for whether those laws vest a chattel in one person, or direct its distribution amongst many, they equally merit respect and observance. Therefore, if, in the state of Virginia, this species of property is clothed with some of the qualities, which appertain to real estate ; if, like that, it is made descendible to the heirs at law, and exempted from the payment of debts, where there are sufficient assets without it ; so far, its nature is changed ; but in all other respects it remains, and must be considered as chattel property. And the local policy which hath thus distinguished it, must necessarily confine the operation of those particular laws, to the citizens and inhabitants of that State : this is meant, however, in relation only to those laws ascertaining the right, and not to those prescribing the remedy ; which must from their nature bind equally citizens and strangers. Slaves, then, being chattel property, notwithstanding certain incidents annexed to them applicable only to the citizens of that state, there is a conflict of laws, relative to them, in the two states ; and in such cases, the law of the country where the owner resides, must prevail.
The decree made by the Court of Chancery in Virginia, relative to the division, cannot be con *225 clusive, as to the title of the negroes in question. Of the persons claiming a right under William, George, alone, was a party to the suit, in which the decree was pronounced. The other children and the widow of William, were neither parties, nor privies ; nor was there any person, before the court, interested to protect their rights, or even to disclose them. Had the distribution been made amongstall, George’s share must have been diminished in proportion ; and therefore, he was interested to keep their pretensions out of view. Besides, the points now in contest were not decided, upon the former occasion ; when, the only question was whether the property should be divided into six equal shares, in which, no doubt, all the parties concurred. The question now is, whether the widow and children shall share with George, the sixth part which he received. The present plaintiffs therefore, and those for whom they claim, have never been heard, their rights have not been asserted ; under which circumstances, it is contrary to natural justice, and to the law, both of Virginia, and this state, that they should be concluded by the decree.